IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH P. CLEMENS, )<br>)<br>Plaintiff )<br>)<br>) No. 06 C 7027<br>v. )<br>) The Honorable William J. Hibbler<br>DONALD C. WINTER, Secretary of the Navy, )<br>)<br>Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Joseph Clemens worked as a firefighter for the United States Navy for less than a month. When Clemens requested an alternative work schedule, the Navy sent him home until a doctor cleared him to return. Clemens never returned and when the Navy terminated his employment, he sued it, alleging that the Navy had violated the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* and retaliated against him for complaining about discrimination. The Navy moves for summary judgment.

The parties devote a portion of their briefs and statements of material fact to Clemens's employment history, describing his employment up to ten years prior to the events in question, none of which is material here. The Court will begin in June 2003, when Clemens served as an Emergency Equipment Dispatcher for the Navy. That month, Clemens requested leave for an unspecified medical condition. (Def. 56.1(a)(1) Statement of Fact ¶ 13). Clemens initially took sick leave, and as his leave extended, he ultimately found himself designated by the Navy as absent without leave. (Id.).

1

Approximately one month into this extended leave, Clemens applied for a different position with the Navy: a firefighter's position. (Def. St. ¶ 15). In November 2003, while still on leave for his dispatcher position, Clemens received a tentative offer of employment for the firefighter position. (Def. St. ¶ 17). As part of a pre-employment health-screening, Clemens submitted to a Navy physician a form in which he stated that he had no "medical disorder or physical impairment which would interfere in any way with the full performance of the duties shown below." (Def. St. ¶ 18).[1] At Clemens's physical examination, he "denie[d] any history or treatment for any back problem in the past and present time." (Def. St. Ex. 12). The doctor who examined Clemens cleared him to work in the firefighter position. (Id.).

In December 2003, Clemens's supervisor for the dispatcher position, Victor Fuentes, confronted him at a Navy Human Resources Office (where Clemens had reported for a drug screening). (Def. St. Ex. 7 at 2). Fuentes believed that the requirements for the firefighter position were more stringent than the dispatcher position, for which Clemens was then on leave-without-pay status. (Id.). As a result, Fuentes changed Clemens's status to absent without leave. (Def. St. ¶ 25; Def. St. Ex. 7 at 2).

Clemens believed that Fuentes might attempt to derail his appointment to the firefighter position and sent an e-mail to the Commander of the Naval Station at which Clemens was to be employed as a firefighter. (Def. St. ¶ 26). Clemens requested a meeting with Commander Roux and

---

[1] Clemens objects to many of the exhibits on which the Navy relies for its motion as hearsay. Clemens's objections are without merit. First, the statement contained in this document is Clemens's own statement, and thus is a party admission. Many of the other documents to which Clemens objects are business records. Unless otherwise noted, Clemens's objections are denied and any statement to which he objects, but provides no other basis to dispute is deemed to have been admitted.

2

informed him that he was "a qualified individual with a disability [that] does not prohibit me from performing the essential functions, duties, or responsibilities, of a firefighter, without endangering others or myself." (Def. St. Ex. ¶¶ 26-27, Ex. 14). Roux agreed to meet with Clemens.

During the meeting with Roux, Clemens confided in Roux that he suffered from depression, but also told him that he could fully perform the firefighter duties without an accommodation. (Def. St. ¶ 28, Ex. 18).[2] Clemens provided Roux with medical documentation of his condition and past performance reviews. (Clemens Dep. at 130; Def. St. Ex. 21). At the conclusion of the meeting, Roux directed Clemens to provide medical information to Navy personnel and further directed the personnel to hire Clemens, presuming Clemens cleared any medical hurdles. (Def. St. ¶ 29). Although the parties dispute when Clemens provided such material, that dispute is not relevant, for he did and the Navy did in fact hire him.

Clemens began working as a firefighter on March 7, 2004. (Def. Ex. 6). Ten days later, Clemens told his supervisor, Michael Bench, that he suffered from a disability that caused sleeping problems and requested that Bench assign him a work schedule that included only eight-hour days and forty-hour weeks. (Clemens Dep. at 44-46). Clemens supplied Bench with several documents to verify his medical condition. (Def. St. Ex. 28).[3] Two days later, Clemens met with Bench and

---

[2] Clemens suggests that Defendant's paragraph twenty-eight is "misleading and argumentative," and points the Court to paragraph ten of his Statements of Fact. But in that paragraph, Clemens cites to a portion of his deposition that concerns a conversation he had with his supervisor, not the meeting he had with Commander Roux. Because Clemens points to no evidence to dispute Defendant's statement of fact, the Court deems Clemens to have admitted paragraph twenty-eight.

[3] One of these documents, a U.S. Department of Labor Certification form completed by Clemens's personal physician just 10 days before Clemens started as a Navy firefighter, stated that Clemens suffered from chronic depression and was "incapacitated now and will be for the next year for all jobs except firefighter/supervisor position." Clemens's physician later opined

3

Fire Chief David Biondi. (Def. St. ¶ 34). Biondi placed Clemens on leave, and requested medical information regarding Clemens's condition.

Clemens then completed a form in which he stated his personnel physician had cleared him to work light duty (which consisted of a standard work week) and that he currently took prescription medications that did not affect his ability to perform his job. (Def. St. ¶ 36). A few days later, Bench sent Clemens a request for more specific medical information. (Def. St. ¶ 37, Ex. 28). Both Clemens's personal physician and his psychologist provided written notes stating that Clemens could perform the functions of his position. (Def. St. Exs. 29-30). Clemens's psychologist stated that "the regular scheduled week is *recommended.*" (Def. St. Ex. 29) (emphasis added). Each note was a single paragraph in length and did not discuss the medical bases for the opinions. (Def. St. Exs. 29-30).

Shortly after Clemens submitted this information, the Navy determined that the information provided by Clemens's physicians did not "address the specific questions regarding his ability to perform the duties of the job he was hired to perform." (Def. St. Ex. 31). The Navy further determined that it could not employ a firefighter on an eight-hour shift, and as a result, the Navy terminated Clemens's employment. (Def. St. Exs. 1, 31).

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could

---

that Clemens could not work as a dispatcher, but could work as a firefighter or supervisor. Nowhere in the form did Clemens's physician provide a medical basis for this peculiar distinction. (Def. St. Ex. 17).

4

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, courts must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, --- U.S. ----, ----, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

The Rehabilitation Act of 1973 prohibits employment discrimination by federal agencies in the basis of disability. 29 U.S.C. § 791 *et seq.*; *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). Among other things, agencies must provide reasonable accommodations for qualified individuals with disabilities. 29 U.S.C. § 791(g) (directing courts to apply definition of discrimination under Americans with Disabilities Act). To establish a failure-to-accommodate claim, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) the employer was aware of the disability; (3) the employer failed to provide a reasonable accommodation for that disability. *EEOC v. Sears, Roebuck, & Co.*, 417 F.3d 789, 797 (7th Cir. 2005).[4]

---

[4] In his response brief, Clemens briefly argues in favor of a disparate-treatment claim. That claim, however, is wholly undeveloped, Clemens never points to any non-disabled persons who were treated more favorably, but instead states "plaintiff was certainly treated differently that [sic] other employees not in a protected group," without any explanation. The Court will not consider this cursory, undeveloped argument. *See Davis v. Carter*, 452 F.3d 686, 691-92 (7th Cir. 2006). In any event, any disparate treatment claims fail for the same reason as Clemens's failure-to-accommodate claim: he is not a qualified individual with a disability.

Clemens can not demonstrate that he is a qualified individual with a disability. A person is not disabled unless he has (or has a record of or is regarded as having) a mental or physical impairment that substantially limits one or more major life activities. *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681, 691, 151 L.Ed. 2d 615 (2002); *Cassimy v. Bd. of Educ. of Rockford Public Sch. Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006). Not every medical affliction gives rise to a substantial limitation of a major life activity. *Cassimy*, 461 F.3d at 936; *Ogburn v. United Food and Commercial Workers Union, Local No. 881*, 305 F.3d 763, 767 (7th Cir. 2002). Though depression can be a disability under the ADA, it may or may not substantially limit a major life activity, and courts must examine how the impairment impacts the life of the individual. *Cassimy*, 461 F.3d at 936.

Clemens claims that his depression substantially limits his ability to sleep and to interact with others. Although the Seventh Circuit has recognized sleeping as a major life activity, it has required evidence that the limitations on sleeping claimed by plaintiffs are "prolonged, severe, and long-term," before it recognizes a substantial limitation. *Squibb v. Memorial Medical Ctr.*, 497 F.3d 775, 784 (7th Cir. 2007); *Burks v. Wisc. Dept. of Transp.*, 464 F.3d 744, 757 (7th Cir. 2006); *Scheerer v. Potter*, 443 F.3d 916, 920-21 (7th Cir. 2006). In order to demonstrate a substantial limitation in sleeping, a plaintiff must establish that his trouble sleeping impacts his waking functions. *Squibb*, 497 F.3d at 784; *Storey v. City of Chicago*, No. 07-1815, 2008 WL 382650, at *3 (7th Cir. Feb. 13, 2008). In other words, a plaintiff must show more than that he gets a "'tough night's sleep.'" *Burks*, 464 F.3d at 75 (quoting *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998)). The Seventh Circuit has repeatedly rejected claims that depend on generalized, personal assertions that are unsupported by other evidence. *See, e.g., Storey*, 2008 WL 382650; *Squibb*, 497 F.3d at 784;

6

*Burks*, 464 F.3d at 756 (holding that "bald and self-serving assertions in affidavits, unsubstantiated by any documentation or other testimony, are not sufficient to create a material issue of fact as to whether an impairment has substantially limited a major life activity").

In this case, Clemens testified, generally, about his lack of sleep, stating that he slept only about four hours in a twenty-four hour period. (Clemens Dep. at 32). As a result of his sleeping pattern, Clemens claims he interacted with friends and family and also avoided certain hobbies, such as riding motorcycles and camping. (Clemens Dep. at 25-30). Clemens testified that he "was not so inclined to do normal daily stuff." (Clemens Dep. at 25).

Nowhere does Clemens point to evidence in the record that demonstrates that his difficulty getting a full night's sleep had any regular or substantial impact upon his daily activities. Instead, the record suggests the contrary. Clemens's work history, medical history, and even his own statements suggest that his inability to sleep does not significantly impact his wakeful activities. Clemens worked for the Navy from 1998-2002 in a position that required at least one 24-hour shift per week, and never experienced any performance issues related to his inability to sleep. (Def. St. ¶¶ 6-10). Clemens also worked a 72-hour work week for the Army while taking the same medication that he alleges causes his sleep difficulty. (Def. St. ¶ 5). Prior to being hired by the Navy for the firefighter's position, Clemens's personal physician and psychiatrist each stated that he could perform the duties of a firefighter without any limitations or restrictions. (Def. St. Exs. 15-17). Clemens's psychiatrist later stated that Clemens had been taking the same prescription medication "for years" and that the medication "do[es] not and ha[s] never interfered with his job performance." (Def. St., Ex. 30). In an affidavit, Clemens stated that he did not "require an accommodation, but

[he] would like to have one to make [his] life easier." An accommodation, Clemens stated, would "simplify" his life. (Def. St., Ex. 24 (Clemens Aff. at 3-4)).

Clemens's general assertions do not rise to the level required by the Seventh Circuit to demonstrate that Clemens is substantially limited in sleeping. He has failed to point to any evidence in the record to establish that his difficulty sleeping is any worse than that suffered by millions of adults. Accordingly, the Court holds that Clemens is not a qualified individual with a disability and his failure to accommodate claim must fail.

Moreover, even if the Court were to hold that Clemens is a qualified individual with a disability, his requested accommodation, to work a standard 40-hour week, is not reasonable. Although job restructuring can be a reasonable accommodation, 42 U.S.C. § 12111(9), employers are not required to make accommodations that would pose "undue hardships" upon them. 42 U.S.C. § 12112(b)(5)(A); *Mobley v. Allstate Ins. Co.*, — F.3d —, —, 2008 WL 2652786, at *6 (7th Cir. 2008).

The Navy submitted evidence to demonstrate allowing a single fire-firefighter to work a standard 40-hour week, instead of three 24-hour shifts, would impose both logistical and financial burdens upon the Navy. (Def. St. ¶¶ 46-48).[5] The Rehabilitation Act does not require the Navy to assign Clemens a permanent, light-duty firefighter position, with a standard 40-hour week, when every other firefighter worked a 72-hour week (with three 24-hour shifts). *Ammons v. Aramark*

---

[5] Clemens disputes these allegations, pointing to his own statement. But he points only to his deposition testimony in which he speculates that certain other firefighters were "accommodated" by the Navy. Clemens, however, provides no evidence of the positions of these personnel, whether they were in fact disabled, the reasons for any changes to their work schedule, or even evidence of their work schedules. In short, the only evidence he provides is his own self-serving speculation. (Clemens Dep. 66-71).

8

*Uniform Serv., Inc.*, 368 F.3d 809, 819 (7th Cir. 2004) (employer not required to create a new position for employee); *DeVito v. Chicago Park Dist.*, 270 F.3d 523, 534 (7th Cir. 2001) (employer not required to assign employee to permanent light-duty status); *Basith v. Cook County*, 241 F.3d 919, 929-930 (7th Cir. 2001) (employer not obligated to create a new position for employee); *Ozlowski v. Henderson*, 237 F.3d 837, 841 (7th Cir. 2001) (employer not required to reallocate job functions). A part-time schedule is not a reasonable accommodation for a full-time job, and that, in essence, is what Clemens sought. *See, e.g., Hoffman v. Zurich Financial Serv.*, No. 06 C 4890, 2007 WL 4219414, at * 5 (N.D. Ill. Nov. 28, 2007) (collecting cases).

Clemens's retaliation claim merits little discussion. Clemens suggests that his first act of statutorily protected activity came when he spoke with Roux about his medical records in November 2003. But Clemens requested that meeting shortly after his confrontation with his former supervisor Fuentes. More importantly, after the meeting, Roux directed that the Navy hire Clemens pending the completion of medical examinations (a direction with which the human resources office complied). Clemens has failed, entirely, to offer any connection whatsoever between this statutorily protected act and any adverse employment action.

Clemens also argues that the Navy retaliated against him after he spoke with an EEO Counselor. Clemens's deposition reveals that he did not, in fact, file an EEO complaint, but instead spoke about the "issues of the paperwork and the medical information being disclosed." (Clemens Dep. at 81-83). Clemens does not explain how an informal conversation with an EEO counselor became the basis of a retaliatory act. In fact, Clemens makes no effort whatsoever to link the conversation with any act taken by the Navy. He can't even recall when the conversation took place. (Clemens Dep. at 81-83).

9

Clemens's retaliation claim hinges upon self-serving, speculation. Under Clemens's argument, any employee who has any conversation with an EEO counselor who sometime later suffers an adverse employment action could successfully press a retaliation claim. Such a standard makes little sense. Moreover, Clemens produces no evidence to refute the Navy's reasons for its action: it could not employ a firefighter who desired to work only one-third of the standard work shift.

For the foregoing reasons, the Court GRANTS the Navy's Motion for Summary Judgment. IT IS SO ORDERED.

7/21/08
Dated

Hon. William J. Hibbler
United States District Court